## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL ROCHE,** | : | **Civil No.  1:20-CV-873** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW M. SAUL** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

The Supreme Court has underscored for us the limited scope of our review

when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)

1

(comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, the plaintiff, Paul Roche, applied for disability insurance benefits under Title II of the Social Security Act on May 15, 2018, alleging disability due to depression and anxiety, as well as a 2018 diagnosis for asymptomatic HIV. (Tr. 228). However, after consideration of the medical records and opinion evidence, including the objective diagnostic tests and clinical findings on Roche's physical and mental examinations, as well as his consistently asymptomatic status with respect to his HIV, and his documented activities of daily living, the Administrative Law Judge ("ALJ") who reviewed this case concluded that Roche could perform a range of work with non-exertional limitations.

Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

Paul Roche was born in December of 1961 and was 56 years old at the time of the alleged onset of his disability. (Tr. 35). Roche has a college education and

claimed disability beginning in January of 2018 due to an HIV diagnosis, depression, and back pain. (Tr. 267-75, 301-09).

With respect to Roche's HIV diagnosis, the administrative record reveals that Stephen J. Pancoast, M.D., diagnosed Roche with HIV in June of 2018. At that time Dr. Pancoast advised Roche that it was fairly early in the disease and that many of his complaints would resolve with effective anti-retroviral therapy (ART) (Tr. 523, 525). Dr. Pancoast prescribed Biktarvy (Tr. 569). It appears that Roche responded well to the anti-retroviral regimen. By September 2018, Roche's viral load, the measure of virus in his bloodstream, was undetectable at less than 20 with a CD4 count of 886. (Tr. 53-54, 565). These were positive and unremarkable findings since a normal range for CD4 cells is between 500-1,500.[1]

The available medical records indicate that Roche continued to respond well to this anti-retroviral treatment. Thus, in November 2018, Dr. Pancoast noted that Roche was feeling well (Tr. 762, 764). He had a normal physical examination and appeared healthy, well nourished, well groomed, and alert. (Tr. 764). His mood and affect were normal and his memory was intact. (Tr. 764). Further, Roche denied having any ART-related side effects. (Tr. 766). By January 2019, Roche was

---

[1] CD4 Count, U.S. Dept. of Veteran Affairs, available at https: www.hiv.va.gov/patient/diagnosis/labs-CD4-count.asp (last visited Jan. 6, 2021).

reporting that he felt well, except for a cough. (Tr. 752). His appearance and examination results were unchanged from November 2018, (Tr. 754), and he was instructed to maintain his anti-retroviral therapy as prescribed. (Tr. 756). In light of this clinical history, based upon a medical record review, on August 8, 2018, Dr. Crescenzo Calise, a state agency medical expert, opined that Riche's HIV diagnosis did not constitute a sever impairment. (Tr. 223). The record does not reveal any countervailing medical opinion relating to the severity of Roche's physical condition.

As for Roche's mental state, the record is more complex and equivocal but contains substantial evidence which suggests that Roche can pursue some gainful activity. There are two competing medical opinions regarding the disabling effects of Roche's emotional impairments. Dr. Francis Murphy, a non-examining state agency expert found based upon Roche's medical records that Roche was experiencing depression and related disorders. (Tr. 224). According to Dr. Murphy, these emotional impairments imposed moderate limitations on Roche's ability to concentrate, but Roche retained the mental capacity to perform simple tasks and make simple work-related decisions. (Tr. 226).

In contrast, Dr. Matthew Berger, a physician associated with a practice which was treating Roche in 2018 and 2019 completed a check box form which opined that

Roche's emotional impairments were totally disabling. (Tr. 876-77). Dr. Berger's disability opinion, however, stood in stark contrast to the medical practice's actual treatment notes. (Tr. 878-902). These treatment records were noteworthy on several scores. First, they revealed that Dr. Berger was not directly involved in Roche's care and treatment during 2018 and 2019. Instead, Roche was treated by Julia Oja, PAC, and Dr. Satish Mallik. (Tr. 881). Moreover, the medical notations made by Roche's actual caregivers during multiple clinical encounters between June 2018 and April 2019 confirmed that Roche suffered from depression but consistently found that he was cooperative, articulate, coherent, appropriate, and displayed adequate, fair or intact insight, memory and judgment. (Tr. 880, 884, 888, 891, 894, 897, 902). Thus, the findings reflected in the treatment records more closely approximated the opinion of the state agency expert, Dr. Murphy, than the extreme degree of impairment found by Dr. Berger.

It was against the backdrop of this medical record that a hearing was held on June 18, 2019. (Tr. 40-114). At the hearing, both Roche and a Vocational Expert testified. (Id.). Following this hearing on October 4, 2019, the ALJ issued a decision denying Roche's application for benefits. (Doc. 22-39). In that decision, the ALJ first concluded that Roche met the insured status requirements of the Social Security Act through December 31, 2022 and had not engaged in any substantial gainful

activity since the alleged onset date of disability on January 15, 2018. (Tr. 27). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Roche suffered from emotional impairments, including depression and anxiety. (Tr. 28). The ALJ found, however, that Roche's asymptomatic HIV, which was well under control with anti-retroviral medications, was not a severe impairment (Id.). At Step 3, the ALJ determined that Roche did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 28-31).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity (RFC), considering Roche's limitations from his impairments, which stated that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast paced production environment, involving only simple, work related decisions, and in general, relatively few work place changes. He is further limited to occupations, which require no more than occasional interaction with supervisors, coworkers, and members of the general public. He is also limited to occupations, which do not involve the handling, sale, or preparation of alcoholic beverages.

(Tr. 31).

In reaching this RFC determination, the ALJ gave greater weight to Dr. Murphy's opinion, which found that Roche experienced only moderate mental

limitations and retained the mental capacity to perform simple tasks and make simple work-related decisions. (Tr. 33-34). The ALJ afforded less weight to the highly restrictive opinion expressed by Dr. Berger. (Id.) According to the ALJ, Dr. Berger's opinion was not based on any direct treatment history with Roche in 2018 and 2019. Moreover, that opinion was inconsistent with the treatment notes of Roche's actual caregivers, PAC Oja and Dr. Mallik, both of whom consistently found that he was cooperative, articulate, coherent, appropriate, and displayed adequate, fair or intact insight, memory and judgment. (Id.)

Having arrived at this RFC assessment for Roche, based upon a careful evaluation of these various medical opinions the ALJ found that there were a substantial number of jobs in the national economy that he could perform. (Tr. 34-36). Accordingly, the ALJ concluded that Roche did not meet the stringent standard for disability set by the Act and denied this disability claim. (Id.).

This appeal followed. (Doc. 1). On appeal, Roche contends that the ALJ's decision is not based on substantial evidence required under 42 U.S.C. § 405(g) because the ALJ erred in assessing the medical opinion evidence and erred by failing to recognize his asymptomatic HIV as a severe impairment.[2] This case is fully

_____

[2] Roche has also advanced a contention that he is now disabled due to the current COVID-19 pandemic which creates special concerns for immune-compromised persons. Understandably, this contention was not presented at the October 2019

briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, the Commissioner's final decision is affirmed.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

---

administrative hearing since the COVID pandemic had not struck at that time. However, given that the issue has not been addressed at the administrative agency level it cannot be considered in the first instance on appeal since "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).

conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993).  But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation

demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).   To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.   42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").   20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal

requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic

14

view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work

experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  <u>Id</u>. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999).

## C.   <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's]

16

symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions are generally entitled to more weight. See 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. However, 20 C.F.R. §404.1527(e) provides that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants should be evaluated as medical opinion evidence. Therefore, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by

18

evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–

19

00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

In addition, when conducting this review of competing medical opinion evidence:

[I]n determining the weight to be given to a medical source opinion, it is also well-settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the source's medical opinion, and the doctor's actual treatment notes, justifies giving a medical source opinion little weight in a disability analysis. Torres v. Barnhart, 139 Fed.Appx. 411, 415 (3d Cir. 2005). Additionally, "an opinion from a [medical] source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F.Supp.3d 135, 145 (M.D. Pa. 2016).

Pinca v. Berryhill, No. 1:17-CV-1519, 2018 WL 2024800, at *8 (M.D. Pa. May 1, 2018).

It is against these legal benchmarks that we assess the instant appeal.

20

D.     **The ALJ's Decision in this Case is Supported by Substantial Evidence.**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Roche was not disabled. Therefore we will affirm this decision.

1.     **The ALJ's Step Two Evaluation is Supported by Substantial Evidence and Any Alleged Error is Harmless on These Facts.**

Roche's first claim of error challenges the ALJ's step two evaluation. (Doc. 16, at 1). Specifically, Roche argues that the ALJ erred in concluding that his asymptomatic HIV diagnosis was not a severe impairment. At Step Two of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it "significantly limits an

21

individual's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities. McCrea v. Comm'r of Soc. Sec., 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a de minimis screening device used to cast out meritless claims. McCrea, 370 F.3d at 360; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. Bowen, 482 U.S. at 146.

Judged by these guideposts, we find that the ALJ's step two evaluation in this case is supported by substantial evidence. At step two, the ALJ found that Roche's emotional impairments were severe medical conditions, but concluded that his HIV diagnosis, which was entirely asymptomatic, did not rise to the level of a severe impairment. With respect to Roche's HIV diagnosis, the administrative record shows that Stephen J. Pancoast, M.D., diagnosed Roche with HIV in June 2018 and effectively addressed this condition through anti-retroviral therapy (ART) (Tr. 523, 525). Roche has responded well to the anti-retroviral regimen. By September 2018, Roche's viral load, the measure of virus in his bloodstream, was undetectable at less than 20 with a CD4 count of 886, a medical finding which fell well within the normal

range for CD4 cells, between 500-1,500. Moreover, Roche has continued to respond well to this anti-retroviral treatment. Thus, in November 2018, Dr. Pancoast noted that Roche was feeling well (Tr. 762, 764). He had a normal physical examination; appeared healthy, well nourished, well groomed, and alert; his mood and affect were normal and his memory was intact. (Tr. 764). Roche also denied having any ART-related side effects. (Tr. 766). By January 2019, Roche was reporting that he felt well, except for a cough. (Tr. 752). His appearance and examination results were unchanged from November 2018, (Tr. 754), and he was instructed to maintain his anti-retroviral therapy as prescribed. (Tr. 756). Based upon a medical record review, on August 8, 2018, Dr. Crescenzo Calise, a state agency medical expert, opined that Roche's HIV diagnosis did not constitute a severe impairment. (Tr. 223). This opinion is not otherwise contradicted by any clinical or opinion evidence.

On these facts, the ALJ's finding that Roche's asymptomatic HIV diagnosis did not constitute a severe impairment is supported by substantial evidence. Indeed, this finding is consistent with a rising tide of caselaw which recognizes that asymptomatic HIV is not necessarily a severe medical condition in the Social Security disability context. See e.g., Durst v. Saul, No. CV 19-2101, 2020 WL 5501201, at *4-5 (E.D. Pa. Sept. 11, 2020) (upholding ALJ's finding that plaintiff's HIV/AIDS was a non-severe impairment where ALJ noted the symptomatic period

did not fulfill the duration requirement and further that there were no identified functional limitations for a twelve month or longer period); <u>Capaccio v. Comm'r of Soc. Sec.</u>, No. 16-C V-843 HBS, 2018 WL 3949895, at *3-5 (W.D.N.Y. Aug. 16, 2018) (upholding ALJ's finding that plaintiff's HIV was a non-severe impairment where medical records showed plaintiff was asymptomatic, her viral load was undetectable, she had normal physical examinations, and the evidence did not suggest any significant symptoms or impairments stemming from plaintiff's HIV positive status) (citing <u>Worthy v. Barnhart</u>, No. 01 CIV. 7907 (JSM), 2002 WL 31873463, at *5 (S.D.N.Y. Dec. 23, 2002) (no disability for HIV where status was stable and no opportunistic infections were present)); <u>Quiles v. Barnhart</u>, 338 F. Supp. 2d 363, 372 (D. Conn. 2004) (remanding at step five but finding no severe impairment for HIV, where plaintiff's "adherence to his drug regimen significantly alleviated his symptoms")).

In any event, it is evident that the ALJ considered the emotional impact of this HIV diagnosis in connection with the evaluation of Roche's mental impairments. This continued consideration of the emotional impact of Roche's HIV diagnosis is fatal to this Step 2 argument since it is well settled that: "even if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects

24

of that impairment at steps three through five." <u>Naomi Rodriguez v. Berryhill</u>, No. 1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019)(citing cases). Therefore, we find no basis for disturbing the ALJ's Step 2 determination in this case.

## 2.  **The ALJ Properly Weighed the Medical Opinion Evidence.**

Roche also contends that the ALJ erred in assigning greater weight to the mental health evaluation of Dr. Murphy than to the severely restrictive opinion advanced by Dr. Berger. The Court of Appeals has long held that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. <u>Chandler</u>, 667 F.3d at 361. The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ may also choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999). Further, an ALJ may conclude that discrepancies between the source's medical opinion, and the doctor's actual treatment notes, justifies giving a medical source opinion little weight in a

disability analysis. <u>Torres v. Barnhart,</u> 139 F. App'x. 411, 415 (3d Cir. 2005).

Additionally, "an opinion from a [medical] source about what a claimant can still do

which would seem to be well-supported by the objective findings would not be

entitled to controlling weight if there was other substantial evidence that the claimant

engaged in activities that were inconsistent with the opinion." <u>Tilton v. Colvin</u>, 184

F.Supp.3d 135, 145 (M.D. Pa. 2016).

Here, we find that substantial evidence supported the ALJ's evaluation of

these two medical opinions. At the outset, we note that Dr. Berger's opinion was set

forth in a singularly unpersuasive fashion through a summary check box form.  On

this score:

> "[I]it is well settled that: '[f]orm reports in which a physician's
> obligation is only to check a box or fill in a blank are weak evidence at
> best.' " <u>Passaretti v. Berryhill</u>, No. 4:17-CV-1674, 2018 WL 3361058,
> at *8 (M.D. Pa. July 10, 2018) (quoting <u>Mason v. Shalala</u>, 994 F.2d
> 1058, 1065 (3d Cir. 1993)). Thus, this check block form opinion was a
> thin reed upon which to rest a claim of disability.

<u>Wheeler v. Saul</u>, No. 1:19-CV-1340, 2020 WL 3172801, at *12 (M.D. Pa. June 15,

2020). Further, Dr. Berger's opinion was not based on any direct treatment history

with Roche in 2018 and 2019 and was inconsistent with the treatment notes of

Roche's actual caregivers, PAC Oja and Dr. Mallik, both of whom consistently

found that he was cooperative, articulate, coherent, appropriate, and displayed

adequate, fair or intact insight, memory and judgment. The marked discrepancy

between Dr. Berger's highly restrictive opinion and the treatment notes of Roche's actual caregivers provided ample justification for affording this medical opinion less weight in the disability evaluation process. There was no error here.

In sum, in this case the ALJ was confronted by a record marked by contrasting medical opinions. In reconciling the discordant and conflicting threads of this evidence, the ALJ found that Dr. Berger's opinion was inconsistent with the overall medical record, including Roche's treatment records, and therefore deserved less weight. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence supported the ALJ's decision in the instant case. Thus, at bottom, it appears that Roche is requesting that this Court re-weigh the evidence. This we may not do. See, e.g., Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder'")). Because we cannot re-weigh the evidence, and because we find that the ALJ properly articulated that substantial evidence did not support lending greater weight to Dr. Berger's medical opinion, we find the ALJ has not erred in the evaluation of this opinion evidence.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the

law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge


March 24, 2021.